**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Freedom From Religion Foundation, Inc., | ) | |
| Dorothy Manley, Ken Mischka, Judy | ) | |
| Mischka, John Ford, and Deidre Godycki, | ) | **ORDER GRANTING** |
| | ) | **DEFENDANTS' MOTIONS** |
| Plaintiffs, | ) | **TO DISMISS** |
| | ) | |
| vs. | ) | |
| | ) | Case No. 1:07-cv-043 |
| Carol K. Olson, in her official capacity, | ) | |
| Lisa Bjergaard, in her official capacity, | ) | |
| Wayne Sanstead, in his official capacity, | ) | |
| Daniel P. Richter, in his official capacity, | ) | |
| and Mary Hermanson, in her official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

_____

In this action, the Plaintiffs contend that the Defendants, heads of various state and county agencies, improperly direct taxpayer funds to the support of religion in violation of the Establishment Clause of the First Amendment and 42 U.S.C. § 1983.

Before the Court is a Motion to Dismiss filed by defendants Carol K. Olson, Lisa Bjergaard, and Wayne Sanstead (State of North Dakota) on December 4, 2007, and a Motion to Dismiss filed by defendants Daniel P. Richter and Mary Hermanson on December 24, 2007. See Docket Nos. 9 and 12. The Plaintiffs filed a response in opposition to the State of North Dakota's motion on January 14, 2008. See Docket No. 20. The State of North Dakota filed a reply brief on January 18, 2008. See Docket No. 21. On January 30, 2008, the Plaintiffs filed a response in opposition to Richter and Hermanson's motion. See Docket No. 24. Richter and Hermanson filed a reply brief on February 6, 2008. See Docket No. 25. The Court grants the Defendants' motions to dismiss for the reasons set forth below.

I.      **BACKGROUND**

The plaintiff, Freedom From Religion Foundation, Inc., is a Wisconsin corporation with its principal office in Madison, Wisconsin.  Freedom From Religion Foundation members are opposed to the government endorsement of religion.  Each individual plaintiff is a resident of North Dakota and is a member of the Freedom From Religion Foundation.  Dorothy Manley is a resident of Mandan, Morton County; Ken Mischka and Judy Mischka are residents of Valley City, Barnes County; and John Ford and Deidre Godycki are residents of Rugby, Pierce County.

Defendant Carol K. Olson is the Executive Director of the North Dakota Department of Human Services.  Defendant Lisa Bjergaard is the Director of the Division of Juvenile Services within the North Dakota Department of Corrections and Rehabilitation.  Defendant Wayne Sanstead is the North Dakota Superintendent of Public Instruction.  Defendant Daniel P. Richter is the Director of the Ward County Social Services Department.  Defendant Mary Hermanson is the Director of the Pierce County Social Services Department.

The North Dakota Department of Human Services and the North Dakota Department of Public Instruction are public agencies funded with North Dakota taxpayer appropriations and appropriations from the federal government.  The North Dakota Division of Juvenile Services is a public agency funded with North Dakota taxpayer appropriations.  The Ward County Social Services Department and the Pierce County Social Services Department are public agencies that are funded with North Dakota taxpayer appropriations and local taxpayer appropriations.

The Dakota Boys and Girls Ranch, with locations in Minot, Fargo, and Bismarck, North Dakota, provides residential treatment and educational services to children referred for treatment by North Dakota government agencies.  See Docket No. 6, ¶ 21.  North Dakota agencies that refer

children in their custody to the Dakota Boys and Girls Ranch are responsible for paying for the care, treatment, and education of each child.  <u>See</u> Docket No. 6, ¶ 45.  The Dakota Boys and Girls Ranch, a publicly accredited Christian organization, receives taxpayer appropriations pursuant to disbursement programs authorized by the North Dakota Legislative Assembly.  <u>See</u> Docket No. 6, ¶¶ 21-52.  The Defendants oversee and are responsible for the disbursement of taxpayer appropriations, including appropriations that are used to pay for the care, treatment, and education of children housed at the Dakota Boys and Girls Ranch.  <u>See</u> Docket No. 6, ¶ 53.

The Plaintiffs filed a second amended complaint on October 18, 2007.  <u>See</u> Docket No. 6. The Plaintiffs contend that the Defendants' disbursements of taxpayer appropriations to the Dakota Boys and Girls Ranch violate "the fundamental principle prohibiting government endorsement of religion by disbursing taxpayer appropriations for the operation of a faith-based organization that includes the integration of religion as an inherent component of services provided."  <u>See</u> Docket No. 6, ¶ 63.  The Plaintiffs seek the following relief:

1)  for a declaration that the Defendants' actions violate the Establishment Clause of the First Amendment to the United States Constitution and 42 U.S.C. § 1983;

2)  for an order enjoining the Defendants from continuing to refer children to the Dakota Boys and Girls Ranch to receive services paid for with taxpayer appropriations, if religion remains integrated as part of those services;

3)  for an order enjoining the Defendants from using state and county funds to promote, advance, or endorse the establishment of religion, including disbursements made to the Dakota Boys and Girls Ranch;

4)  for a judgment awarding the Plaintiffs further relief as the Court deems just and equitable; and

     5)      for a judgment awarding the Plaintiffs the reasonable costs, disbursements, and attorneys' fees allowed by law, including pursuant to 42 U.S.C. § 1988.

<u>See</u> Docket No. 6, ¶ 75.

      The Defendants did not file answers to the Plaintiffs' second amended complaint.  The State of North Dakota filed a motion to dismiss for lack of subject matter jurisdiction on December 4, 2007, and on December 24, 2007, Richter and Hermanson filed a motion to dismiss for lack of subject matter jurisdiction.  <u>See</u> Docket Nos. 9 and 12.

      The Defendants contend that the Plaintiffs do not have standing to bring this action.  The State of North Dakota contends that the Plaintiffs lack standing because they do not identify a specific act or appropriation that expressly authorizes or directs public entities to refer children to, or pay any funds to, the Dakota Boys and Girls Ranch.  <u>See</u> Docket No. 10, p. 12.  The State of North Dakota also argues that the Plaintiffs only allege the wrongful allocation of taxpayer appropriations made by executive branch officials, which does not grant the Plaintiffs standing to sue.  <u>See</u> Docket No. 10, p. 14.  Similarly, Richter and Hermanson contend that the Plaintiffs lack standing because they have challenged the executive expenditure of taxpayer appropriations instead of challenging the appropriation of taxes by the North Dakota Legislative Assembly.  <u>See</u> Docket No. 13, p. 8.

      The Plaintiffs argue that they have standing to sue the State of North Dakota because they are challenging the disbursement of taxpayer appropriations "made to fund legislatively-authorized social service programs."  <u>See</u> Docket No. 20, p. 16.  The Plaintiffs contend that they have standing to sue Richter because Ward County uses state taxpayer appropriations to fund the Dakota Boys and Girls Ranch.  <u>See</u> Docket No. 24, p. 7.  The Plaintiffs contend that plaintiffs Ford and Godycki have standing to sue Hermanson due to their status as municipal taxpayers.  <u>See</u> Docket No. 24, p. 3.

II.     **LEGAL DISCUSSION**

     A.     **STANDARD OF REVIEW**

     The purpose of a motion to dismiss "is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts of the substantive merits of the plaintiff's case." 5B Wright & Miller, Federal Practice and Procedure § 1356 (2004). When deciding on a motion to dismiss, the issue for the Court is not whether the plaintiff will ultimately prevail but rather if the plaintiff is entitled to offer evidence to support its claims. See Thomson v. Olson, 866 F. Supp. 1267, 1270 (D.N.D. 1994). A motion to dismiss should be denied if the complaint is legally sufficient and if the plaintiff can conceivably prove a set of facts to support the claim that would entitle it to relief. See United States v. Dairyland Ins. Co., 485 F. Supp. 539, 542 (D.N.D. 1980) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

     B.     **STANDING**

     It is well-established that in every federal case, the party bringing a lawsuit must establish standing to prosecute the action. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). The question of standing is whether the plaintiff is entitled to have a court decide the merits of the dispute. "The doctrine of standing is 'an essential and unchanging part of the case-or-controversy requirement of Article III,' Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992), which itself 'defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded.'" Ne. Florida Chapter of the Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 663 (1993) (quoting Allen v. Wright, 468 U.S. 737, 750 (1984)).

Three requirements constitute the "irreducible constitutional minimum" of standing.  A plaintiff must first demonstrate an injury-in-fact that is concrete, distinct and palpable, and actual or imminent.  McConnell v. Fed. Election Comm'n, 540 U.S. 93, 225 (2003).  A plaintiff must then establish that there is a causal connection between the injury and the conduct complained of – the injury must be fairly traceable to the defendant's conduct and not the result of a third party not before the court.  Id.  Finally, a plaintiff must show that there is a substantial likelihood that the requested relief will remedy the alleged injury-in-fact.  Id. at 225-226.

It is well-established that the injury-in-fact element "requires a showing that the plaintiff faces a threat of ongoing or future harm."  Park v. Forest Serv. of the United States, 205 F.3d 1034, 1037 (8th Cir. 2000).  An abstract injury is not sufficient and the injury or threat of injury must be real and immediate rather than conjectural or hypothetical.  City of Los Angeles v. Lyons, 461 U.S. 95, 101-102 (1983).

### 1.    STANDING TO SUE THE STATE OF NORTH DAKOTA

The Plaintiffs challenge the disbursement of taxpayer appropriations made by individual executive branch officials.  They do not contend that the North Dakota Legislative Assembly, through the passage of specific legislation, mandates that state officials allocate specific funds to the Dakota Boys and Girls Ranch.  The Plaintiffs essentially contend that they have standing to sue the State of North Dakota for disbursing funds to the Dakota Boys and Girls Ranch by virtue of their status as state taxpayers.  The United States Supreme Court has, on several occasions, denied federal taxpayers standing under Article III to object to a particular expenditure of federal funds simply because they are taxpayers.  DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 343 (2006).

6

The United States Supreme Court in <u>Hein v. Freedom From Religion Found.</u>, 127 S. Ct. 2553, 2559 (2007), was recently confronted with a federal taxpayer challenge to the President's Faith Based and Community Initiatives program as violative of the First Amendment's Establishment Clause.  The plaintiffs asserted taxpayer standing to challenge the program because funds from the federal treasury were used to fund the initiative.  The Supreme Court rejected that argument and stated as follows:

> It has long been established, however, that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government.  In light of the size of the federal budget, it is a complete fiction to argue that an unconstitutional federal expenditure causes an individual federal taxpayer any measurable economic harm.  And if every federal taxpayer could sue to challenge any Government expenditure, the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus.

"Standing has been rejected in such cases because the alleged injury is not concrete and particularized, but instead a grievance the taxpayer suffers in some indefinite way in common with people generally.  In addition, the injury is not actual or imminent, but instead conjectural or hypothetical." <u>DaimlerChrysler Corp.</u>, 547 U.S. at 344 (internal citations and quotations omitted).

The United States Supreme Court has likened state taxpayers to federal taxpayers for the purpose of establishing taxpayer standing.  <u>DaimlerChrysler Corp.</u>, 547 U.S. 332, 345 (2006).  Just like federal taxpayers, state taxpayers do not have "standing under Article III to challenge state tax or spending decisions simply by virtue of their status as taxpayers."  <u>DaimlerChrysler Corp.</u>, 547 U.S. at 346.  The Supreme Court has made clear that what the Court previously said about having standing to challenge a federal statute applies equally to a state act.  <u>Doremus v. Bd. of Educ. of Borough of Hawthorne</u>, 342 U.S. 429, 434 (1952).  "'The party who invokes the power must be able to show, not only that the statute is invalid, but that he has sustained or is immediately in danger of

7

sustaining some direct injury as a result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally.'" Doremus, 342 U.S. at 434 (quoting Frothingham v. Mellon, decided with Massachusetts v. Mellon, 262 U.S. 447, 488 (1923)); see Minnesota Fed'n of Teachers v. Randall, 891 F.2d 1354, 1356 (8th Cir. 1989). Accordingly, taxpayers have standing to challenge the individualized assessment of taxes against them because collection of the tax has a direct and immediate impact on their personal finances. See Comm'r of Internal Revenue v. Banks, 543 U.S. 426 (2005). However, taxpayers do not generally have standing to challenge how tax dollars lawfully collected from them are used by the government. The alleged injury of misused tax dollars is not concrete and particularized but is instead a grievance the taxpayer suffers in some indefinite way in common with the public-at-large. Article III standing requires that the plaintiff be "immediately in danger of sustaining some direct injury" rather than an indefinite injury shared in common with others.

As set forth above, the status of being a state taxpayer generally does not grant a plaintiff Article III standing. As a general rule, the interest of a taxpayer in seeing that the legislature spends funds in accordance with the Constitution does not give rise to the type of redressable personal injury required to establish standing to sue in federal court. In this action, the Plaintiffs have not alleged any concrete and particularized injuries. Instead, any alleged injuries from having the Dakota Boys and Girls Ranch receive taxpayer appropriations are those shared in common with the general public, which is not sufficient to meet the Article III standing requirements. The Plaintiffs merely allege hypothetical injuries based on their state taxpayer status. It is clear that under the current state of the law, the Plaintiffs do not have standing to sue the State of North Dakota based solely on their status as state taxpayers.

2.      **THE FLAST EXCEPTION**

Although the Plaintiffs do not have standing to sue the State of North Dakota based solely on their status as state taxpayers, there is an exception to the general constitutional prohibition against taxpayer standing.  A very narrow exception to the rule against taxpayer standing was established in Flast v. Cohen, 392 U.S. 83 (1968).  That exception consists of a two-part test:

> First, the taxpayer must establish a logical link between that [taxpayer] status and the type of legislative enactment attacked.  Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution.  It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute . . . .  Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged.  Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8.

Hein, 127 S. Ct. at 2564 (quoting Flast, 392 U.S. at 102-103).  "Flast limited taxpayer standing to challenges directed only at exercises of congressional power."  Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 479 (1982).  In Hein, the United States Supreme Court restated the Flast exception as requiring a "link between congressional action and constitutional violation" in order for a taxpayer to have standing.  Hein, 127 S. Ct. at 2566.  The Flast exception may be applied to state taxpayer challenges just as it is applied to federal taxpayer challenges.  See Booth v. Hvass, 302 F.3d 849, 852-853 (8th Cir. 2002) (citing Tarnsey v. O'Keefe, 225 F.3d 929 (8th Cir. 2000)).

To satisfy the first prong of the Flast exception, there must be a link between taxpayer status and a disputed exercise of congressional power.  It is not sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute.  The Court finds

that the Plaintiffs fail the first prong of the <u>Flast</u> exception because they have not attacked any legislative action or appropriation but instead have simply challenged the discretionary expenditure of funds made by executive branch officials carrying out their official duties. The <u>Flast</u> exception does not apply for the same reasons that were set out in <u>Hein</u>:

> Respondents do not challenge any specific congressional action or appropriation; nor do they ask the Court to invalidate any congressional enactment or legislatively created program as unconstitutional. That is because the expenditures at issue here were not made pursuant to any Act of Congress. Rather, Congress provided general appropriations to the Executive Branch to fund its day-to-day activities. These appropriations did not expressly authorize, direct, or even mention the expenditures of which respondents complain. Those expenditures resulted from executive discretion, not congressional action.

127 S. Ct. at 2566.

The scope of <u>Flast</u> has been confined by later United States Supreme Court decisions. <u>See</u> <u>Valley Forge Christian College</u>, 454 U.S. 464 (1982) (taxpayers lacked standing to challenge transfer of former military hospital to church-related college under Federal Property and Administrative Services Act); <u>Schlesinger v. Reservists Comm. to Stop the War</u>, 418 U.S. 208 (1974) (taxpayers lacked standing to challenge right of members of Congress to maintain commissions in Armed Forces Reserves); <u>United States v. Richardson</u>, 418 U.S. 166 (1974) (taxpayers did not have standing to compel publication of CIA accounting). The Supreme Court has acknowledged its refusal to expand <u>Flast</u>'s holding: "It is significant that, in the four decades since its creation, the <u>Flast</u> exception has largely been confined to its facts." <u>Hein</u>, 127 S. Ct. at 2568-69.

In this case, the Plaintiffs do not challenge the appropriation of taxes by the legislature. Instead, they attack the discretionary, executive expenditure of those funds within the framework of the child welfare system of the State of North Dakota. All of the challenged actions are undertaken by executive agencies (the North Dakota Department of Human Services, the North

10

Dakota Division of Juvenile Services, the North Dakota Department of Public Instruction, the Ward County Social Services Department, and the Pierce County Social Services Department).  In fact, there are no legislative appropriations made to support the Dakota Boys and Girls Ranch.  Because the Plaintiffs "do not challenge any specific [legislative] action or appropriation; nor do they ask the Court to invalidate any [legislative] enactment or legislatively created program as unconstitutional," they lack standing.  Hein, 127 S. Ct. at 2566.

This case is distinguishable from Bowen v. Kendrick, 487 U.S. 589 (1988), in which the United States Supreme Court found taxpayer standing consistent with Flast.  In Bowen, the challenged legislation (the Adolescent Family Life Act (AFLA)) established a framework for providing grants to public or nonprofit private organizations or agencies.  The challenged legislation expressly stated that federal services should "emphasize the provision of support by other family members, religious and charitable organizations, voluntary associations, and other groups," and required demonstration projects to use methods that made use of "support systems such as other family members, friends, religious and charitable organizations, and voluntary associations."  487 U.S. at 596.  Thus, even though AFLA delegated to the Secretary of Health and Human Services the authority to define what types of services a grantee was required to provide, "AFLA not only expressly authorized and appropriated specific funds for grant-making, it also expressly contemplated that some of those moneys might go to projects involving religious groups."  Hein, 127 S. Ct. at 2567 (citing Bowen, 487 U.S. at 595-96).  As a result, the plaintiff-taxpayers in Bowen had standing to challenge "a program of disbursement of funds pursuant to Congress' taxing and spending powers that Congress had created, authorized and mandated."  Hein, 127 S. Ct. at 2567 (citing Bowen, 487 U.S. at 619-20) (internal quotations omitted).

Here, the Plaintiffs challenge neither a specific legislative appropriation under taxing and spending powers nor any program for the disbursement of funds collected through those appropriations. As a result, their lawsuit is not directed at an exercise of legislative power and lacks the necessary nexus between taxpayer status and the type of legislative enactment attacked.

This case is also distinguishable from the recent decision of the Eighth Circuit Court of Appeals in Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406 (8th Cir. 2007). In that case, the plaintiffs argued that a Christian, residential, pre-release rehabilitation program in an Iowa state prison violated the Establishment Clause. Americans United for Separation of Church and State and state taxpayers argued that they had standing based on state taxpayer status. The Eighth Circuit found state taxpayer standing because the Iowa state legislature had "made specific appropriations from public funds" to fund the Christian, residential inmate program. Id. at 420. The Iowa legislature had specifically earmarked public funds for the Christian, value-based treatment program in prison. In the present case, the Plaintiffs do not contend that the North Dakota Legislative Assembly made any specific appropriation to fund the Dakota Boys and Girls Ranch and, as such, Americans United is distinguishable. Based on the current state of the law, the Court expressly finds that the Plaintiffs do not have Article III standing to bring suit against the State of North Dakota.

### 3.   STANDING TO SUE DEFENDANT RICHTER

The Pierce County Social Services Department and the Ward County Social Services Department are county-administered, state-supervised agencies that are responsible for the delivery of economic assistance and social service programs to the citizens of Pierce County and Ward

County, as required by federal and state law.  The only expenditure challenged by the Plaintiffs is the payment of funds to the Dakota Boys and Girls Ranch.

Every county is obligated, up to the limits of its human services appropriation, to provide assistance to its residents who are eligible to receive such assistance.  N.D.C.C. § 50-01-01.  Each county is permitted to levy and assess a human services tax for the support of needy persons in its county.  N.D.C.C. § 50-03-01.  Counties that elect to do so are required to maintain a "human services fund" out of which expenditures for the needy are to be made.  N.D.C.C. §§ 50-03-02, 50-03-03.  The costs of supporting, transporting, and providing medical treatment to children who are committed to the legal custody of a public agency are also charged to the county in which the child resides.  N.D.C.C. § 27-20-49.  Every county is required to appropriate and make available to the human services fund amounts to pay for locally administered economic assistance programs, the county's share of amounts spent in the state in excess of federal funding for medical assistance, and the county's share of costs for other services.  N.D.C.C. § 50-03-08.  The formula used to determine each county's share is created by the Department of Human Services.  N.D.C.C. § 50-03-09.

Although technically "county" agencies, both Pierce County and Ward County social service agencies operate within the confines of programs and regulations established by federal agencies (such as the Department of Health and Human Services) and state agencies (such as the Department of Human Services).  See N.D.C.C. § 50-06-05.1(8) (empowering the Department of Human Services to direct and supervise county social service board activities financed in whole or in part by or with funds allocated or distributed by the department); N.D.C.C. § 50-06-05.1(17) (authorizing the Department of Human Services to direct and supervise county administration of food stamp

program); N.D.C.C. § 50-06-12 (making agreements by the Department of Human Services for the acceptance, transfer, and support of any person from another state binding on counties).

The regulatory framework within which child placements are required to be made, including the licensure and conduct of residential treatment facilities for children, falls within the duties and responsibilities of the Department of Human Services.  See N.D.C.C. §§ 25-03.2-02, 25-03.2-03, 25-03.2-10 (granting the Department of Human Services rule-making authority with respect to residential treatment centers for children); N.D.C.C. § 50-01.2-03 (requiring county social service boards to supervise and administer designated child welfare services under the direction and supervision of the Department of Human Services and permitting social service board to be released from this duty only with approval of the Department of Human Services); N.D.C.C. § 50-06-06.13 (directing the Department of Human Services to establish a program to provide out-of-home treatment services for Medicaid-eligible children with serious emotional disorders); N.D.C.C. §50-11-03 (granting the Department of Human Services rule-making authority with respect to foster care facilities).  Licensing criteria, and whether a particular facility satisfies those criteria, are regulated entirely by the State of North Dakota.  County social service boards act as designees of the North Dakota Department of Human Services which supervises and directs through policies and procedures.

In essence, the Plaintiffs' challenge is directed at programs established and/or administered within the statutes and regulations of the State of North Dakota and its agencies.  The gist of the complaint is that children are referred to the Dakota Boys and Girls Ranch and that those referrals are funded with taxpayer dollars (county, state, and federal).  However, a county social service agency can only recommend placement of a child with a licensed facility.  Whether the child is

14

actually placed at a facility is ultimately up to the Department of Human Services – not the county social service agency.  Thus, the actual target of this lawsuit is a <u>State</u> program.

The Plaintiffs have not identified any county program directing children to be placed with the Dakota Boys and Girls Ranch, nor any specific appropriation for the purpose of such placement. Placement is required to be made in accordance with Department of Human Services regulations. Presently, North Dakota has six (6) licensed residential treatment facilities, which include the Dakota Boys and Girls Ranch.  As a result, a challenge to the expenditure of funds by the Ward County Social Services Department or the Pierce County Social Services Department is, in essence, an attack on a state-mandated and administered system.

The Plaintiffs contend that they have standing to sue defendant Daniel Richter, the director of the Ward County Social Services Department, because they are state taxpayers and Ward County "allegedly is using state taxpayer appropriations in violation of the Establishment Clause" by funding the Dakota Boys and Girls Ranch.  <u>See</u> Docket No. 24, p. 7.  None of the Plaintiffs is alleged to be residents or taxpayers of Ward County, North Dakota.  For the same reasons that the Court found that the Plaintiffs do not have standing as state taxpayers to sue the State of North Dakota, the Court finds that the Plaintiffs do not have standing as state taxpayers to sue defendant Daniel Richter in his official capacity as Director of the Ward County Social Services Department.

## 4.    <u>STANDING TO SUE DEFENDANT HERMANSON</u>

Plaintiffs John Ford and Deidre Godycki also argue that they have municipal taxpayer standing to sue defendant Mary Hermanson in her official capacity because Ford and Godycki are taxpayers in Pierce County, the county in which Hermanson is the Director of the Pierce County

Social Services Department.  The Plaintiffs argue that the Pierce County Social Services Department refers children to the Dakota Boys and Girls Ranch, and that Pierce County pays for those referrals with state and county taxpayer appropriations, in violation of the Establishment Clause.  See Docket No. 24, pp. 1-2.  The Plaintiffs do not argue that the remaining individual plaintiffs have standing to sue Hermanson.

Federal and state taxpayer standing is distinguishable from municipal taxpayer standing.  See Booth v. Hvass, 302 F.3d 849, 851-852 (8th Cir. 2002) (citing Frothingham, 262 U.S. at 486).  The issue of whether certain plaintiffs have municipal taxpayer standing is much less clear in this case than the issue of federal and state taxpayer standing.  The Eighth Circuit Court of Appeals has previously addressed municipal taxpayer standing:

> In [Crampton v. Zabriskie, 101 U.S. 601 (1879)], the Supreme Court held that county taxpayers have a direct interest in the application of the county's funds and they may sue for injunctive relief from illegal disposition of those funds.  The Supreme Court reaffirmed this position in Frothingham, where it noted that municipal taxpayers have a direct interest in the municipality's application of its moneys, and remedy by injunction is warranted.

Booth, 302 F.3d at 853 (internal citations omitted).  Although the Eighth Circuit mentioned municipal taxpayer standing in Booth, its focus was on state taxpayer standing and, therefore, the court did not set forth the criteria needed to establish municipal taxpayer standing.  Because the Eighth Circuit has not specifically addressed municipal taxpayer standing in detail, this Court must look elsewhere for guidance.

Courts in the Eleventh Circuit utilize a two-part test to determine municipal taxpayer standing:  (1) that the plaintiff is a municipal taxpayer, and (2) that municipal funds are being spent on the challenged activities.  See Alabama Freethought Ass'n v. Moore, 893 F. Supp. 1522, 1532-33 (N.D. Ala. 1995); see also Bats v. Cobb County, Georgia, 495 F. Supp. 2d 1311, 1317 (N.D. Ga.

2007).  The Plaintiffs argue that to establish municipal taxpayer standing, they "must only show that they are county resident taxpayers and that the county allegedly has used tax money in violation of the Establishment Clause."  See Docket No. 24, p. 3.  While plaintiffs John Ford and Deidre Godycki are municipal taxpayers in Pierce County, the second prong of the test demands further discussion.

The second prong of the municipal taxpayer standing test used by federal district courts in the Eleventh Circuit requires that the plaintiff establish "a causal link between the use of tax money and the challenged activity."  Alabama Freethought Ass'n, 893 F. Supp. at 1533.  In other words, "a plaintiff must allege and prove that a 'measurable appropriation or disbursement of [tax monies is] occasioned solely by the activities complained of.'"  Id. (quoting Doremus, 342 U.S. at 434).  "Thus, expenditures which the [county] would incur even absent the allegedly unconstitutional activity cannot satisfy the second element."  Alabama Freethought Ass'n, 893 F. Supp. at 1533 (citing Gonzales v. N. Twp. of Lake County, 4 F.3d 1412, 1416 (7th Cir. 1993)).

The Plaintiffs contend that the costs of referring and committing children to the Dakota Boys and Girls Ranch are funded, in part, by Pierce County taxpayer appropriations, thus establishing a link between Pierce County tax money and the challenged activity.  See Docket No. 6, ¶¶ 53-56. The Plaintiffs merely assert that Pierce County residents pay municipal taxes and that Pierce County taxes are used in part to refer children to the Dakota Boys and Girls Ranch.  Even absent the use of Pierce County tax appropriations to refer children to the Dakota Boys and Girls Ranch, those tax appropriations would occur because there would be other treatment facilities to which Pierce County would refer children.  It necessarily follows that the use of Pierce County tax monies to refer children to a treatment facility is not occasioned solely by the existence of the Dakota Boys and

17

Girls Ranch.  See Alabama Freethought Ass'n, 893 F. Supp. at 1533 (quoting Doremus, 342 U.S. at 434).  The Court finds that the Plaintiffs have not established the causal link between Pierce County tax monies and the Dakota Boys and Girls Ranch necessary to satisfy the second prong of the municipal taxpayer test adopted by federal district courts in the Eleventh Circuit.

The United States Supreme Court's reasoning in Doremus is also an important consideration in this case.  342 U.S. 429.  The plaintiffs in Doremus sought judgment declaring that the State of New Jersey's statute providing for the reading of parts of the Bible at the opening of each public school day was invalid.  Id. at 430.  The Supreme Court found that the plaintiffs did not have taxpayer standing, focusing on the fact that the plaintiffs did not contend that the Bible reading was supported by any "separate tax or paid for from any particular appropriation or that it adds any sum whatever to the cost of conducting school."  Id. at 433.  The plaintiffs did not provide information about the taxes they paid, nor did they argue that the Bible reading increased "any tax they do pay or that as taxpayers they are, will, or possibly can be out of pocket because of it."  Id.  While the focus was on state taxpayer standing, several courts have found that this "good-faith pocketbook" requirement applies to municipal taxpayer standing as well.  See Altman v. Beford Century Sch. Dist., 245 F.3d 49, 72-73 (2d Cir. 2001); PLANS, Inc. v.Sacramento City Unified Sch. Dist., 319 F.3d 504 (9th Cir. 2003); Dist. of Columbia Common Cause v. Dist. of Columbia, 858 F.2d 1, 4-5 (D.C. Cir. 1988); Alabama Freethought Ass'n, 893 F. Supp. at 1533.

Similarly, the Plaintiffs have not established that Pierce County has instituted a separate tax or paid for services from any specific appropriation designed to support the Dakota Boys and Girls Ranch, nor have the Plaintiffs shown that the referral of children to the Dakota Boys and Girls Ranch adds to the cost of referring children to treatment facilities.

18

A plaintiff who tries to "leverage the notion of municipal taxpayer standing beyond challenges to municipal action" should not have municipal taxpayer standing. <u>DaimlerChrysler Corp.</u>, 547 U.S. at 349. The plaintiffs' challenge in <u>DaimlerChrysler Corp.</u> was to state law and state decisions, but they claimed municipal taxpayer standing. In this case, the Plaintiffs are trying to "leverage the notion of municipal taxpayer standing" onto their challenge against programs established and administered by the State of North Dakota and its agencies. The North Dakota Century Code grants the Department of Human Services the authority to make rules regarding treatment centers for children. N.D.C.C. § 25-03.2-10. The Department of Human Services directs and supervises the counties' administration of "designated child welfare services." N.D.C.C. § 50-01.2-03(7). It is clear from the record that the Plaintiffs' challenge is to the State of North Dakota, not to an individual county such as Pierce County.

The peculiar relation of a taxpayer to the county in which he or she resides is absent in this case, particularly where the Plaintiffs' allegations are really leveled at the <u>State</u> system – not a county system. Any disbursements by the Ward County Social Services Department or the Pierce County Social Services Department are made within the restrictions of the state system and, as such, the Plaintiffs' claims should be analyzed as a challenge to state action. The Plaintiffs' lawsuit is essentially an attack on the state-directed system of child placement and treatment and it should be analyzed in those terms.

The courts should refrain from passing upon the constitutionality of an act of the representative branches unless obliged to do so when the question is properly raised by a party whose interests entitle him or her to raise it. "State policymakers, no less than their federal counterparts, retain broad discretion to make 'policy decisions' concerning state spending 'in

19

different ways . . .  depending on their perceptions of wise state fiscal policy and myriad other circumstances.'" <u>DaimlerChrsyler Corp.</u>, 547 U.S. at 346 (quoting <u>ASARCO Inc. v. Kadish</u>, 490 U.S. 605, 615 (1989)).  "Indeed, because state budgets frequently contain an array of tax and spending provisions, any number of which may be challenged on a variety of bases, affording state taxpayers standing to press such challenges simply because their tax burden gives them an interest in the state treasury would interpose the federal courts as virtually continuing monitors of the wisdom and soundness of state fiscal administration, contrary to the more modest role Article III envisions for federal courts." <u>DaimlerChrysler Corp.</u>, 547 U.S. at 346 (internal quotations omitted).

The Court finds that the Plaintiffs have not established a sufficient link between or pocketbook injury from their payment of municipal taxes and the referral of children to the Dakota Boys and Girls Ranch.  Therefore, the Court finds that plaintiffs John Ford and Deidre Godycki do not have municipal taxpayer standing to sue defendant Mary Hermanson in her official capacity as Director of the Pierce County Social Services Department.


III.   <u>CONCLUSION</u>

There is no question that very difficult issues of taxpayer standing to sue exist in this case. However, the payment of taxes is generally not enough to establish standing to challenge an action by the state or county government.  The requisite elements of Article III standing are well-established.  The Court finds that standing does not exist and that the narrow exception to the general constitutional prohibition against taxpayer standing has not been established.  For the reasons set forth above, the Court finds that the Plaintiffs lack state taxpayer standing to sue defendants Carol Olson, Lisa Bjergaard, Wayne Sanstead, and Daniel Richter in their official

capacities, and they lack municipal taxpayer standing to sue defendant Mary Hermanson in her official capacity.  Therefore, the Court **GRANTS** the State of North Dakota's Motion to Dismiss (Docket No. 9) and **GRANTS** Daniel Richter and Mary Hermanson's Motion to Dismiss (Docket No. 12).

**IT IS SO ORDERED.**

Dated this 16th day of July, 2008.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court